IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| JIMMY LEE NICKELSON, | ) |
| | ) |
| Plaintiff, pro se, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) **AND RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, | ) 1:07CV00783 |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff, Jimmy Lee Nickelson, brought this action pursuant to sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 18, 2004, alleging a disability onset date of June 16, 2004. Tr. 56, 170. The applications were denied initially and upon reconsideration. Tr. 28, 29; 174, 180. Plaintiff requested a hearing de novo before

an Administrative Law Judge (ALJ). Tr. 39. Present at the hearing, held on May 4, 2006, were Plaintiff, his attorney, and a vocational expert (VE). Tr. 190.

By decision dated October 23, 2006, the ALJ determined that Plaintiff was not disabled within the meaning of the Act. Tr. 18. On August 24, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 6, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review. Subsequently, the Appeals Council also denied Plaintiff's request for reopening. Tr. 10.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since June 16, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.,* 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairment: lumbar spine degenerative disc disease (20 CFR 404.1520(c) and 416.920(c)).

Tr. 20. She continued:

> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
> . . .
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a wide range of light exertional activity with the following functional

> limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk six hours in an eight hour day; occasional crouching; occasional bending at the waist; sit/stand option.

Tr. 21. The ALJ concluded, based on the VE's testimony, that Plaintiff was able to perform his past relevant work (PRW) as a security guard, given his residual functional capacity (RFC) as found by the ALJ. Tr. 25.

Notwithstanding this finding, the ALJ went on to consider whether Plaintiff would be able to successfully adjust to other work in the national economy. At the time of his alleged onset of disability (AOD), Plaintiff was forty-six years old, regulatorily defined as "a younger individual age 45-49." See id. (citing 20 C.F.R. §§ 404.1563 and 416.963). The ALJ found that Plaintiff has at least a high school education and can communicate in English. She added that transferability of job skills was not an issue in the case.

Based on these factors and Plaintiff's RFC, the ALJ asked the VE whether there were jobs in the national economy that such an individual would be able to perform. See Tr. 26. The VE responded with three jobs, which further could be performed when using either a wheelchair or a cane. Accordingly, the ALJ decided that Plaintiff was not under a "disability," as defined in the Act, from June 16, 2004, through the date of her decision. Id.

3

Case 1:07-cv-00783-TDS-WWD   Document 22   Filed 07/27/09   Page 3 of 20

**Analysis**

In his brief before the court, Plaintiff argues[1] that the Commissioner's findings are in error because the Appeals Council erred in its evaluation of his "new evidence," and because the ALJ erred in her assessments of his credibility and of his treating chiropractor's opinion. Further, because Social Security Ruling (SSR) 06-03p was not in effect at the time the ALJ rendered her decision, she could not have properly performed the sequential evaluation process. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

---

[1] As Plaintiff is proceeding herein pro se, this court will liberally construe his pleadings, see Estelle v. Gamble, 429 U.S. 97 (1976), holding them to a less stringent standard than those drafted by attorneys, Hughes v. Rowe, 449 U.S. 5 (1980) (per curiam). Plaintiff initially posited that the ALJ erred in her RFC and step four findings, but as he failed to develop these arguments in his Brief, the court will not address them.

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration ("SSA"), by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions (the "sequential evaluation process"). An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents PRW, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported

---

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

5

by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

Issues

1. Credibility

Plaintiff disagrees with the ALJ's finding that his statements "concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." Tr. 24. As Plaintiff argues, "The ALJ is required to make credibility determinations . . . about allegations of pain or other nonexertional disabilities. . . . [S]uch decisions should refer specifically to the evidence informing the ALJ's conclusion." Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985) (citation omitted). But Plaintiff fails to provide support for his statement that, "[i]f the ALJ fails to provide adequate reasons

6

for discrediting a claimant's testimony regarding his pain, *then his testimony as a matter of law must be regarded as true.*" Pl.'s Br. at 3 (emphasis added).

To the contrary, "Although specific delineations of credibility findings are preferable, an ALJ's arguable deficiency in opinion-writing technique does not require us to set aside a finding that is supported by substantial evidence." Carlson v. Chater, 74 F.3d 869 (8th Cir. 1996) (quotations omitted). As explained in this circuit's pre-eminent case on credibility:

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

Thus, the ALJ may discount a claimant's subjective complaints of pain based on credibility determinations. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005). Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483, provides that, when the claimant's statements about his pain or other symptoms are not substantiated by objective medical evidence, as in Plaintiff's case, "the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record," id. at 34485. The fact finder is to perform his analysis using the factors listed in section 404.1529(c)(3).

In Plaintiff's case, the ALJ discussed the following:

• the type, dosage, effectiveness, and side effects of any medication: the ALJ noted Plaintiff's use of prescription Voltaren and over-the-counter Tylenol (acetaminophen) for pain relief. Tr. 25. Plaintiff's records indicate that he used Voltaren for only a short period. See Tr. 104, 161. Plaintiff did not report any medication side effects. See Tr. 104. Before receiving the Voltaren prescription, in July 2004, see Tr. 148, he used only Tylenol, with "good relief." Tr. 147; see Tr. 24. See also Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain).

• non-drug treatment the claimant has received for the relief of symptoms: The ALJ noted that Plaintiff was offered injections, but declined them. See Tr. 25. The ALJ commented, "[I]t would appear that if his pain were as debilitating as alleged that he would be seeking relief by some means other than over-the-counter Tylenol and Volteren [sic.]" Id. See also SSR 96-7p, 61 Fed. Reg. at 34487 (claimant's persistent attempts to obtain pain relief support allegations of intense symptoms).

• any other factors concerning the claimant's limitations and restrictions due to his symptoms: The ALJ discussed, Tr. 24, Plaintiff's testimony that his chiropractor "prescribed" a wheelchair for him, see Tr. 204, but there is no record of such in Plaintiff's treatment records, see Tr. 168. Rather, the chiropractor's letter merely advised that a wheelchair "would be beneficial" for Plaintiff, "to enable him

8

to perform some basic personal needs." Tr. 169. The chiropractor did not suggest what those needs were.

The adjudicator is additionally advised to consider medical signs and laboratory findings; medical opinions provided by medical sources; and statements about the claimant's symptoms and their effect on the claimant's ability to work. SSR 96-7p, 61 Fed. Reg. at 34486. In this respect, the ALJ noted that Plaintiff's July 2004 magnetic resonance image ("MRI") showed only a mild-to-moderate dessicated disc or protrusion with a questionable annular tear and no evidence of significant central canal stenosis. Tr. 24; see also Tr. 145. Further, although Plaintiff complained of back pain since 1999, he had consulted only one orthopedist, Dr. Alexander Chasnis. Tr. 24. See also SSR 96-7p, 61 Fed. Reg. at 34487 (claimant's persistent attempts to obtain pain relief support allegations of intense symptoms). Dr. Chasnis's examination revealed unremarkable findings. See Tr. 24; see also Tr. 147-48.

Further, between Plaintiff's AOD and the ALJ's decision of October 2006, there is a record of only one other physician's visit, to an "urgent care" facility in December 2004. See Tr. 161; see also Tr. 24. The ALJ noted that the attending physician found results similar to those of Dr. Chasnis. Moreover, there is no evidence that Plaintiff sought *any* treatment from a caregiver of *any* type, after his last visit with his chiropractor in July 2005. See Tr. 25. See also Singh v. Apfel 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be

9

discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."). Accordingly, the court finds that the ALJ adequately supported her credibility finding with specific references to the record.

Along with his argument against the ALJ's credibility finding, Plaintiff makes several allegations about the ALJ's attitude toward him, and seems to imply that her bias informed her credibility decision. See Pl.'s Br. at 3. Although an administrative adjudicator is presumed to be unbiased, see Schweiker v. McClure, 456 U.S. 188, 195 (1982), this presumption can be rebutted by showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky v. United States, 510 U.S. 540, 556 (1994). Rulings alone, however, are almost never sufficient evidence of bias. Id. at 555; Marozsan v. United States, 90 F.3d 1284, 1290 (7th Cir. 1996). And "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display" do not establish bias. Liteky, 510 U.S. at 555-56. Because the ALJ provided specific reasons for her credibility finding, the court finds Plaintiff's allegations to be without basis.

2. "New" Evidence

After receiving Plaintiff's request for review of the ALJ's decision, the Appeals Council found "no reason" to review and denied the request. Tr. 6. Thereafter, Plaintiff forwarded to the Appeals Council what it described as "a medical report

10

dated April 3, 2007 from Peter Morris, MD."[4] Tr. 10.  Viewing this submission as a request to reopen, the Appeals Council declined to do so, explaining that "[t]he additional medical report indicates that you continue to have back pain, secondary to degenerative disc disease, with signs of a radicular syndrome on the right lower extremity.  However, the additional medical report would not alter the [ALJ's RFC] as found in her decision dated October 23, 2006."  Id.

Plaintiff argues that the Appeals Council erred in declining to reopen his claim. The Appeals Council may reopen a decision if "[n]ew and material evidence is furnished."  Section 404.989(a)(1).[5]  This court, however, under Califano v. Sanders, 430 U.S. 99, 107-08 (1977), is without jurisdiction to review the Commissioner's

---

[4]  A copy of this report is not included in the transcript, and although Defendant's Brief (at page 8) says that it is attached to Plaintiff's initial "Brief" (docket no. 15, which the court subsequently struck as "deficient"), the report is actually attached to Plaintiff's "Motion" (docket no. 14).

[5]  For purposes of section 404.989, SSA utilizes the below standard:

> Generally, evidence is -new- when the adjudicator who made the prior determination or decision did not consider it.  It is "material" when the new evidence, either by itself or when considered with the other evidence then before the adjudicator, would warrant a change in any finding pertinent to any matter at issue or in the ultimate decision (either favorable or unfavorable). If the new evidence does not warrant a change in any finding pertinent to any matter at issue or in the ultimate decision, the evidence is not both "new" and "material" and thus would not satisfy the regulatory standard for reopening.

Social Security Administration, Office of Hearings & Appeals, Litigation Law Manual § I-2-9-40 (Sept. 28, 2005).

11

refusal to reopen claims for disability benefits.[6] See also Hall v. Chater, 52 F.3d 518, 520 (4th Cir. 1995). Accordingly, the court cannot remand Plaintiff's case on this basis.

To the extent, however, that Plaintiff presents an implied request to remand under "sentence six" of 42 U.S.C. § 405(g), such remands "may be ordered in only two situations: where the [Commissioner] requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Shalala v. Schaefer, 509 U.S. 292, 297 n. 2 (1993). In the Fourth Circuit specifically, a reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence must be relevant to the determination of disability at the time the application was first filed; (2) the evidence must be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant must make at least a general showing of the nature of the new evidence to

---

[6] There are limited exceptions to this rule, see generally Kasey v. Sullivan, 3 F.3d 75, 78-79 (4th Cir. 1993), but Plaintiff has suggested none of them.

the reviewing court.  See Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985);[7] see also 42 U.S.C. § 405(g).

For the purposes of 42 U.S.C. § 405(g), "[e]vidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins v. Secretary, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc).  Under this standard, Dr. Morris's report is not material.  He relies on records – Dr. Chasnis's notes and Plaintiff's MRI – which are almost three years old and which the ALJ already had before her; consequently, there is little likelihood that it would have impacted the ALJ's decision.  Dr. Chasnis, who examined Plaintiff and had this same MRI before him, failed to similarly restrict Plaintiff.  See Tr. 145-46.  Rather, Dr. Chasnis advised Plaintiff that he would continue to improve,

---

[7] The court duly notes, and cites its adherence to, the following observation:

> The court in Wilkins v. Secretary of Dep't of Health & Human Serv., 925 F.2d 769 (4th Cir. 1991), rev'd on other grounds, 953 F.2d 93 (en banc), suggested that the more stringent Borders four-part inquiry is superseded by the standard in 42 U.S.C. 405(g).  Id. at 774; see Wilkins v. Secretary of Dep't of Health & Human Serv., 953 F.2d 93, 96 n. 3 (4th Cir. 1991) (en banc).  The standard in § 405(g) allows for remand where "there is new evidence which is material and . . . there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, Borders has not been expressly overruled.  Further, the Supreme Court of the United States has not suggested that Borders' construction of section 405(g) is incorrect.  See Sullivan v. Finkelstein, 496 U.S. 617, 626 n. 6, 110 S. Ct. 2658, 2664 n. 6, 110 L. Ed. 2d 563 (1990).
>
> Given the uncertainty as to the contours of the applicable test, the Court will apply the more stringent Borders inquiry.

Brock v. Secretary of Health & Human Servs., 807 F. Supp. 1248, 1250 n. 3 (S.D. W. Va. 1992).

although he might experience occasional exacerbations. Tr. 145-46. Two state agency experts, upon reviewing Dr. Chasnis's records and the MRI, agreed that Plaintiff could perform "medium"[8] work. Tr. 149; 150-57.

Second, Dr. Morris's objective findings on examining Plaintiff were largely benign, and Plaintiff had seen only one doctor – his urgent care visit almost two and one-half years earlier – between Dr. Chasnis's treatment and his visit with Dr. Morris. Like Dr. Chasnis, Dr. Morris's *objective* findings were that Plaintiff's pulses were two of four and symmetric, and he had no sensory abnormalities. Dr. Morris's Rept. at 4, 5. Plaintiff had no paravertebral muscle spasms, crepitus, effusions, deformities, or trigger points. Id. at 5. The absence of concurrent medical records and studies, and the absence of significantly different objective findings between 2004 and 2007, plainly indicate that Dr. Morris relied on Plaintiff's *subjective* statements in so significantly restricting Plaintiff. But little weight may be accorded an opinion based mainly on the claimant's subjective complaints. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). And since the relevancy of Dr. Morris's assessment would be

---

[8] SSA defines "medium" work as

> lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. As in light work, sitting may occur intermittently during the remaining time.

SSR 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 31 (West 1992) ; see also section 404.1567(c).

conditioned upon the credibility assigned to Plaintiff, the ALJ would have rejected the doctor's opinion.

Further, despite the significant restrictions suggested, Dr. Morris wrote that Plaintiff sat comfortably, both during the interview and the examination. Dr. Morris's Rept. at 3. He observed that Plaintiff was able to walk, get onto and off of the examination table, and take off his shoes, all without assistance.[9]

Dr. Morris restricted Plaintiff's ability to "stand and/or walk," in part, because of "his very slow and antalgic gait." Dr. Morris's Rept. at 5. Yet Dr. Morris observed that Plaintiff's gait was "significantly improved" when using a cane, id. at 4, and the VE specified that the jobs she named could be performed by an individual who needed to use "a cane to ambulate back and forth throughout the day," Tr. 223. Overall, there is no showing that Dr. Morris's opinion is "material," and, thus, its submission provides no support for a remand.

3. SSR 06-03p

Plaintiff expresses concern that the ALJ did not follow Ruling 06-03p, 71 Fed. Reg. 45593, in deciding what weight to accord the opinion given by his treating chiropractor, Dr. Rowland Turner, Jr. Specifically, the ALJ determined to give Dr. Turner's "observations . . . very limited weight," explaining that the chiropractor "is not a qualified medical source." Tr. 25 (citing section 404.1513). The ALJ, however, proceeded to give Dr. Turner's December 30, 2004, letter "partial weight," because

---

[9] Plaintiff had testified that he could not bend down to tie his shoes. Tr. 203.

15

the doctor described Plaintiff's pain as "periodic" rather than "constant." Id. The ALJ believed this characterization was "consistent with the record as a whole, which reflects several exacerbations of back pain over a seven year period but does not establish the ongoing debilitating pain and limitations alleged by the claimant." Id.

Indeed, with the exception of July 2004 (the month succeeding Plaintiff's AOD), the record contains no more than one appointment by Plaintiff with any caregiver other than Dr. Turner. Moreover, Dr. Turner's records reveal periodic visits by Plaintiff, presumably corresponding to exacerbations of his back pain. Plaintiff's relationship with Dr. Turner dates from at least August 1999, after Plaintiff was involved in a motor vehicle accident.[10] See Tr. 133; see also Tr. 129. Plaintiff's visits ended some months later, although Plaintiff saw Dr. Turner once each in January 2002 and February 2003, and twice in October 2003.[11] Tr. 131-33.

Plaintiff returned, however, in January 2004, and saw Dr. Turner several times through February. See Tr. 130. Dr. Turner attributed these visits to a "severe injury," which put Plaintiff out of work for three and one-half weeks. Tr. 129. Interestingly, although Plaintiff testified that his June 2004 injury "put me down,"

---

[10] In his SSA Disability Report, Plaintiff said that his back pain "first bothered" him in 2002. Tr. 71.

[11] Plaintiff told Dr. Chasnis that his back pain began in August 2002 with an on-the-job injury. Tr. 147. At his Urgent Care visit in December 2004, Plaintiff gave his date of first injury as October 2001. See Tr. 161. There are, however, no corresponding records from Dr. Turner or with any other caregiver. Moreover, Plaintiff's characterizations of these incidents differ significantly.

16

Tr. 195, he saw neither Dr. Turner nor any other provider until July.[12] Plaintiff's next treatment with Dr. Turner consisted of several visits in July 2005. See Tr. 168. Hence, the ALJ's weighing of Dr. Turner's statement is duly supported.

In his attempt to counter Dr. Turner's characterization, Plaintiff places reliance on various statements that he had "chronic" pain. See Tr. 145 (Dr. Chasnis); Dr. Morris's Rept. at 5.[13] Plaintiff, however, appears to confuse "constant" with "chronic," the first referring to a condition that continues without interruption, and the second to a condition that is long-lasting and recurrent. "Periodic," on the other hand, is almost a synonym of "recurrent," meaning, as it does, occurring at intervals. Even Dr. Chasnis, upon whom Plaintiff relies, stated that Plaintiff "does, by history, have *recurrent* episodes" of pain. Tr. 145 (emphasis added). The court, therefore, finds no merit to Plaintiff's argument.

Further, Plaintiff's concern about the application of Ruling 06-03p is unfounded, because SSA's stated purpose therefore is simply to "clarify" its longstanding policy on how it "consider[s] opinions from sources who are not 'acceptable medical sources.'" 71 Fed. Reg. at 45594. The Ruling explains that "[m]aking a distinction between 'acceptable medical sources' and medical sources who are not 'acceptable medical sources' facilitates the application of our rules on

---

[12] On June 23, 2004, five days after Plaintiff's AOD, Dr. Turner wrote a letter describing Plaintiff's treatment in *January* 2004. See Tr. 128.

[13] Plaintiff also refers to the report of a Dr. David Ward but, as Plaintiff acknowledges, Pl.'s. Br. at 2, no such report is in the transcript or attached to his Brief at Pleading 17.

17

establishing the existence of an impairment, evaluating medical opinions, and who can be considered a treating source." Id. The designation of a chiropractor as an "unacceptable" medical source has existed at least since the adoption of revised section 404.1513 in August 1980. See 45 Fed. Reg. 55566, 55587 (Aug. 20, 1980). From this regulation's inception, it has provided that information from chiropractors "may also help us to understand how your impairment affects your ability to work." Id.

Ruling 06-03p goes on to explain that "all relevant evidence in the case record" is considered when making a disability decision. 71 Fed. Reg. at 45595. But in revising section 404.1527 ("Evaluating medical opinions about your impairment(s) or disability") in August 1991, SSA re-stated its policy "that we always consider relevant medical opinion evidence together with other relevant evidence when we make our determinations and decisions." 56 Fed. Reg. 36932-01, 36935 (Aug. 1, 1991). See also section 404.1527(b) (2006) ("[W]e will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.").

The Ruling continues with instruction on how to evaluate opinion evidence from un-acceptable medical sources, explaining that the factors listed in section 404.1527(d), applicable to acceptable medical sources, are also to be applied to "other source" opinions. 71 Fed. Reg. at 45595. And Ruling 06-03p specifically provides that, "depending on the particular facts in a case, and after applying the

18

factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' *may outweigh* the opinion of an 'acceptable medical source.'" Id. at 45596 (emphasis added).

The ALJ's decision shows that she applied the principles of Ruling 06-03p in that she evaluated Dr. Turner's opinion in accordance with section 404.1527, specifically, "How consistent the opinion is with other evidence." SSR 06-03p, 71 Fed. Reg. at 45595 (citing section 404.1527(d)). Thus, the ALJ committed no error in her evaluation of the chiropractor's opinion.

Plaintiff goes on to allege that the ALJ erred in not regarding Dr. Turner as her "primary source," in that Dr. Turner regularly treated him. To the extent that Plaintiff attempts to invoke the "treating physician" rule,[14] this he cannot do with regard to Dr. Turner. Great weight is attributed to the opinion of a "treating source" because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). But a "treating source" can only be an "acceptable medical source," see section 404.1502, and a chiropractor, by regulation, is not an acceptable medical source, see section 404.1513(d)(1). Accordingly, the ALJ did not err in failing to assess Dr. Turner as a treating physician.

---

[14] "According to the regulations promulgated by the Commissioner, a treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) (citing section 416.927).

19

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence, and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (docket no. 14) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (docket no. 18) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

_____
WALLACE W. DIXON
United States Magistrate Judge

July 27, 2009